SAVOY, Judge.
Plaintiff, Midland Motels, Inc. filed this suit in contract against Central Plumbing and Heating Company, a commercial partnership, the partners composing the partnership, Jimmie Guinn and Leroy Guinn, and its bonding company, Continental Casualty Company. In the process of constructing its motel on MacArthur Drive in Alexandria, plaintiff entered into a subcontract with Central, dated January 13, 1964, which provided that Central was to furnish all labor and materials for the plumbing and storm drainage systems for the motel as per the plans and specifications, except for certain listed deviations. The motel was completed and was opened about May 1, 1964. Plaintiff alleged that after acceptance of the job and occupancy, trouble developed within the sewer system, which stopped up almost weekly, and that despite the guarantee in the contract, Central refused to work on any sewer stoppages after September, 1964. Plaintiff alleged that because of Central’s refusal to answer any service calls, it was necessary to employ the services of another plumbing contractor, and repairs were required in the amount of $2,671.20 because of defects in material and workmanship in the sewer system. The following defects were alleged in the sewer line across the front of the property: improper grading of the ditch, failure to install concrete footings, substitution of clay piping for service weight soil pipe and improper joining of sections of sewer pipe.
Defendants filed an answer wherein all material allegations relating to liability were denied and it was alleged that Central performed all work as per the contract free from defects in materials and workmanship.
Subsequent to a trial on the merits, the presiding Judge died, and by joint motion the case was submitted on memoranda to the Honorable Field v. Gremillion, who rendered judgment for plaintiff as prayed for in the amount of $2,671.20. From this judgment, defendants appealed to this court.
Defendants maintain that the district court erred in finding that the plans and specifications designated that outside sewer piping was to be of cast iron and that Central substituted a cheaper, less durable material, which resulted in the failure of the material. Defendants maintain that the failure in the system was due to the fault of plaintiff’s agent, Faucheux, who supervised the work for plaintiff, and who failed to coordinate the work of the subcontractors and allowed heavy vehicles to cross the bare ground over the sewer system after its completion. It is maintained that plaintiff cannot recover because it failed to give Central the written demand for performance as required in the contract. Alternatively, defendants maintain that the charges for the repairs were exorbitant and that a fair value for the work done *731 would be $600.00. Plaintiff maintains that the judgment of the district court should be affirmed in all respects.
The record shows that plaintiff constructed its motel-restaurant complex on the west side of MacArthur Drive in Alexandria. Its agent and vice-president, Alvin J. Faucheux, supervised the work. A subcontract for the plumbing and storm drainage systems was awarded to Central for $31,927.00. This contract provided for certain deviations from the original plans and specifications. While the work was in process other changes were made, and some extra work was done on verbal agreements. The motel was completed and began operation about May 1, 1964. Shortly thereafter plumbing difficulties were experienced and Central was called out on several occasions. Central cleared out the lines, but the difficulties continued. When Central failed to respond to the calls the services of L. B. Henry Plumbing Company were secured. Henry found that the sewer drainage line across the front of the building had collapsed and the condition was corrected by the installation of cast iron piping. The total cost of all repairs to the plumbing system, the installation of the new line and resurfacing the blacktop driveway amounted to $2,671.20. The evidence showed that the line installed by Central was constructed of clay pipe which had sagged and collapsed in the area of the driveways to the motel.
The district court found that the plans and specifications called for the outside sewer piping to be cast iron, and that the failure of the system was caused by the substitution of a cheaper, less durable material which resulted in the failure of the material and in the badness of workmanship. Defendants maintain that the plans and specifications do not specify the type of material for the outside sewer piping.
The specifications provide under “Piping” on page S-21-3 that “All soil, waste and vent piping and fittings above ground, 2" and larger, shall be coated standard weight cast iron with joints caulked with lead and oakum. Soil, waste and vent piping below ground shall be same as above but extra heavy weight.” Defendants argue that this provision only applied to the “soil piping” which is confined to that piping within the building itself and within five feet from the exterior of the building. It is claimed that all of the piping or drainage system of the building that is within 5 feet of the building and inside is classified as either soil, waste or vent piping. This argument would restrict the definition of “soil piping” to pipe within the “Building Drain” as defined in the Alexandria Plumbing Code as “The building (house) drain is that part of the lowest horizontal piping of a building drainage system, exclusive of storm sewer, extending to a point not less than 5 feet outside of the building wall.” It is claimed that soil pipe must be distinguished from “sewer piping” which is the piping within the Building Sewer which is defined as “The building (house) sewer is that part of the horizontal piping of a drainage system which extends from the end of the building drain and which receives the discharge of the building drain and conveys it to a public sewer, private sewer, individual sewage disposal system, or other point of disposal.” The same code defines waste pipe as “any pipe which receives the discharge of any fixture, except water closets or similar fixtures, and conveys it to the building drain, soil, or waste stack.”
It is noted however that the Alexandria Plumbing Code also defines “Soil Pipe” as “A soil pipe is any pipe which conveys the discharge of water closets or fixtures having similar functions, with or without the discharges from other fixtures.” This last definition does not restrict the definition of “soil pipe” to that piping within the building drain, as defined, but would also include such piping within the building sewer, as defined.
The plans filed in evidence as P-2 also indicate that the outside sewer piping was to be cast iron. These plans do not show the piping in front of the building that was *732 replaced, however, the drawings show the plumbing from the building by lines with a directional arrow at the end. Above the line indicating the plumbing which extends the length of the building on the south there is shown the following notation, “TO CITY MAIN 6" C.I. PIPE”. From the word pipe there is a directional arrow to the line at a point near the southeast corner of the building. The two other plumbing lines which join into the sewer along the front of the building indicate “TO CITY MAIN 4" C.I. PIPE” with arrows from the word pipe to the lines near the point where they leave the building.
In the bid and in the sub-contract dated January 13, 1964, one of the deviations indicates that “service weight” soil pipe and fittings were to be used rather than “standard weight” as provided in the specifications.
Defendants do not argue that the plans provide specifically and in writing that clay piping could be used in the building sewer system. Nor is there any evidence that plaintiff ever authorized the substitution by Central of clay pipe for iron pipe. The thrust of defendants’ argument is that the plans and specifications were silent on this point and therefore by custom the Alexandria Plumbing Code was used. Defendants’ experts testified to this effect. However, this court agrees with the holding of the district court that the plans and specifications call for the use of cast iron piping in the building sewer system, which would include the outside sewer line placed across the front of the motel.
Although there was evidence that heavy equipment crossed over the fill placed upon the line after it had been completed, and after an unusual amount of rain, this is something that should have been anticipated by Central. Central had knowledge the lines would be crossed by the driveways. The specifications provided that “soil and waste piping shall be supported at each joint, at the hub end” and the evidence indicates this was not done. The evidence does not establish an unusual situation which could not have been anticipated. We agree with the holding of the district court that plaintiff has borne the burden of proving the defects complained of and that the failure in the sewer system was caused by the substitution of materials and badness of workmanship.
Defendants maintain that plaintiff failed to comply with the following provision in the contract requiring notice, to-wit:
“10. Guarantee of Materials and Workmanship
A. Unless otherwise stipulated, all materials shall be new and both workmanship and materials shall be of quality as specified. Contractor will be held responsible for, and must correct and rectify, all defects discovered in his work within 30 days following Architect’s written notice for a period of one (1) year after completion of the structure and its acceptance by the Owner, unless other period of guarantee is hereinafter specified. Contractor’s failure to correct any defective work within the 30 days herein specified will render his conduct negligent; in which case Owner will be entitled to proceed w/the correction of such defects at his discretion and charge Contractor cost plus 10% of the expenses incurred * * *”
The record shows that Central was called on a number of occasions, but failed to remedy the basic trouble with the sewer system, and after a time did not respond at all to the calls for service. Under these facts, we find that Central was placed on notice to correct the problem, but failed to do so. Since the sewer stoppages required the closing of the affected motel rooms, plaintiff was justified in calling in another contractor for the repair of the system. This court interprets the quoted provision as allowing plaintiff to sue for 10% in addition to the costs of repairs, provided the procedure of written notice by the Architect and a 30 days’ delay is fol *733 lowed. However, the failure to follow that strict procedure does not defeat plaintiff’s right under warranty to sue for defects in materials and workmanship.
The final issue is whether or not the amount awarded for repairs is excessive. By the testimony of the owners and employee of L. B. Henry Plumbing Company, the evidence establishes that the labor and materials were furnished by that company in the total amount of $2,511.20. Of this amount, $154.46 was charged for miscellaneous repairs and $2,356.74 was charged for laying the new sewer line. Although the evidence shows the charges appear somewhat high for the work done in laying the sewer line, this evidence was not countered by evidence on behalf of defendants to show where the charges should be reduced. We agree with the district court that the estimate by Jimmie Guinn, that he would take all the work he could get at $4.00 per running foot was not acceptable. This was a relatively small repair job that required special corrective work. Although defendants complained of the concrete footings and cleanout plugs, these were required, as needed, by the specifications. Defendants complained as to the excessive use of cleanout plugs and excessive use of pipe was also not established by the evidence. Although the lot was only 150 feet wide and 210 feet of cast iron piping was used, the evidence shows this was not unreasonable. The pipe extended the length of the lot at an angle and then turned a distance of 20 feet to enter the manhole. This pipe had to be joined by two pipes from the other portion of the building, there was waste from cuttings, and the cleanouts all consumed pipe. No specific evidence was introduced by defendants to show that excessive cast iron pipe was used. The final item of expense was the cost of repairing the blacktop driveway which was torn up to lay the new sewer line. This was adequately established by the testimony of the plaintiff’s manager at $160.00. This court finds that the evidence establishes the cost of the total repairs to be $2,671.20.
For the reasons assigned, the judgment of the district court is affirmed. Costs of appeal are assessed against defendants.
Affirmed.